NO.    93-069

IN THE SUPREME COURT OF THE STATE OF MONTANA

1993

CITY OF KALISPELL, a municipal corporation,

Plaintiff and Appellant,

V.

FLATHEAD COUNTY, a political subdivision
of the State of Montana, and the FLATHEAD
BOARD OF COUNTY COMMISSIONERS,

Defendants and Respondents,

JoSEPHINE  SIDERIUS,

Intervenor  and  Cross-Appellant.

FILED

AUG 3 1 1993

Ed Smith
CLERK OF SUPREME COURT
STATE OF MONTANA

APPEAL FROM:   District Court of the Eleventh Judicial District,
In and for the County of Flathead,
The Honorable Michael H. Keedy, Judge presiding.

COUNSEL OF RECORD:

For  Appellant:

Glen Neier,  City Attorney,  Kalispell,  Montana

For  Respondents:

Thomas J.  Esch, Flathead County Attorney,
Dennis J.  Hester, Deputy County Attorney,
Kalispell,  Montana; Richard DeJana,
Kalispell,  Montana

Submitted  on  Briefs:   June 1, 1993

Decided:   August 31, 1993

Filed:

_____
Clerk

Justice James C. Nelson delivered the Opinion of the Court.

This is an appeal and cross-appeal from an Eleventh Judicial District Court, Flathead County judgment, granting summary judgment to the Intervenor on two issues and denying summary judgment on a third. We dismiss the appeal and remand.

We restate the issue on appeal as follows: is the decision of the board of county commissioners to conditionally approve a preliminary subdivision plat appealable?

The City of Kalispell and Flathead County have established the jurisdictional area of their city-county planning board pursuant to § 76-1-504, MCA. The planning board formulated a master plan for the jurisdictional area which was adopted by the City of Kalispell (the City) and Flathead County (the County) in 1986. The Intervenor owns an approximately 40 acre property which she wants to subdivide and which is located outside but within 3 miles of the corporate city limits of the City and within the jurisdictional area of the city-county planning board. This subdivision is at issue in the present action.

In July of 1991, Intervenor applied for preliminary plat approval for a 5 lot subdivision of her property to be named Ashley Business Park. In August of 1991, the Flathead Regional Development Office (FRDO) provided a report to the Board of Commissioners of Flathead County (the County Board), reviewing, commenting on, and recommending denial of, the application for the subdivision. The FRDO report concluded that the proposed subdivision was not in conformity with the master plan which had

2

designated the area encompassing the proposed subdivision as being appropriate for agricultural use. Additionally, the FRDO report, for the most part, weighed the criteria specified in § 76-3-608, MCA, against the proposed subdivision.

Similarly, on presentment of the proposed subdivision to the City for its review and comment, the City adopted a resolution opposing the granting of preliminary subdivision approval by the County Board.

The journal of the County Board reflects that it reviewed the Intervenor's application for plat approval in September of 1991. It adopted the FRDO's findings of fact with two amendments. However, despite the recommendation of the FRDO that the proposed subdivision be denied and the City's opposition, the County Board, without making written findings of its own, granted preliminary plat approval to Ashley Business Park.

The City filed a complaint in the District Court on October 4, 1991, contending that the County Board's action in approving the preliminary plat was illegal because its decision amounted to spot zoning in an unzoned area: because the preliminary plat was not in conformity with the City-County Master Plan: and because the decision was not supported by substantial evidence and was arbitrary, capricious and an abuse of discretion. The City requested judgment that the County Board's approval of the preliminary plat was null and void and that the court prohibit the County Board from approving the final plat until it conforms to the City-County Master Plan.

3

The Intervenor filed a motion for summary judgment in the action on the grounds that the approval by the County Board was supported by substantial evidence and that, as a matter of law, there could be no spot zoning. The Intervenor brought a second motion for summary judgment on the basis that the City lacked standing in the action.

Ultimately, the trial court ruled:

1. That **Intervenor's** Motion for Summary Judgment on the issue of the Plaintiff's lack of standing is DENIED.

2. That **Intervenor's** Motion for Summary Judgment on the issue of whether the Defendant's preliminary plat approval of a subdivision need not comply with the master plan is GRANTED.

3. That **Intervenor's** Motion for Summary Judgment on the issue of spot-zoning is GRANTED.

This appeal by the City followed.

On appeal, the parties raise significant issues of first impression concerning whether the City has standing to bring this action, whether, and to what extent, the master plan must be used by the county board in the subdivision review process, and whether, in this case, that process was used to illegally spot zone in an unzoned area.

Notwithstanding, we must decline to rule on those issues at this time by reason of our decision in Sourdough v. Board of County Com'rs (1992), 253 Mont. 325, 833 P.2d 207.

That case involved the appeal by an intervening party from the county board's conditional approval of a preliminary subdivision plat. In affirming the district court's dismissal of the petitioner's appeal from the county board's action, we held that

4

the appeal was improperly taken under § 76-2-110, MCA, as that statute deals with planning and zoning issues. We also held that § z-4-702, MCA, could not serve as the basis for appeal as the county board of commissioners is specifically excluded from the agency definition of the Montana Administrative Procedure Act via § 2-4-102(2)(b), MCA.

Finally, since that case, like the present one, was a subdivision case, we held that there was no mechanism under the Montana Subdivision and Platting Act, Title 76, Chapter 3, MCA, for appealing from the conditional approval of a preliminary subdivision plat. Specifically, we observed that, "[t]he legislature did not provide an appeal process under this Act for cases involving decisions of conditional approval of preliminary plats; accordingly, this Court, will not fabricate one." Sourdough 833 P.2d at 208. In dismissing the appeal we found it unnecessary to weigh the conduct of the county board and the exercise of its discretion in conditionally approving the preliminary plat.

In his special concurrence, Justice Trieweiler found that it was "...anomalous that the legislature would enact specific criteria, such as those found in § 76-3-608, MCA, which must be met before a local commission can approve a subdivision and then provide no means of judicially enforcing the law." Sourdough, 833 P.2d at 210.

We note, however, that since our decision in Sourdough was handed down, the legislature enacted significant amendments to the Montana Subdivision and Platting Act but still declined to provide

5

a statutory method for appealing from the conditional approval of a preliminary subdivision plat. See House Bill 408, Section 5, Chapter 272, Laws 1993, effective April 6, 1993.

While the dissent argues that the majority has, sua snonte, decided this case on an issue not raised or briefed by the parties, the Intervenor did, citing Sourdough, argue that there is no appeal from the conditional granting of a preliminary plat and that, therefore, ". ..there can be no standing to bring an action that cannot be brought." Intervenor went on to observe that such a ruling was understandable because "...[u]ntil the land owner has complied with the conditions of the preliminary plat, there is no risk of a case or controversy... [and that] [i]t is upon submission and approval of the final plat, that the issue is ripe for judicial review."

Notwithstanding, the City, in its reply brief filed after Intervenor's brief, chose not to discuss, meet or even mention the citation to Sourdough by the Intervenor. We assume that if the City had disagreed with Intervenor's interpretation of or reference to Sourdough, it would have said so.

That aside, for this Court to simply ignore a dispositive precedent decided within the last year because the parties themselves chose to avoid it or to not entirely rely on that case, merely creates confusion and uncertainty in the law.

In Sourdough, the plaintiff appealed the county board's approval of a preliminary plat by requesting that a writ of mandamus issue directing the county board to appoint the city

6

planning board to review the entire project and reverse the county board's findings of fact.   Notwithstanding,   in affirming the dismissal of the complaint by the district court for failure to state a claim, we held that there is no appeal process from the approval of a preliminary platunder § 76-2-110, MCA, (planning and zoning),   under §§ 76-3-101, MCA, et. seq., (The Subdivision and Platting Act),  or under § 2-4-702, MCA, (MAPA).

Similarly, the City, here, filed a complaint for declaratory judgment, injunction, writ of mandamus or other appropriate writ praying that the county board's approval of the preliminary plat be adjudged null and void and praying that the county board be prohibited from approving the final plat unless it conforms to the master plan.   Since we declined "to fabricate" an appeal process under Sourdoush, we must, if stare decisis means anything,  decline to fabricate an appeal process in the instant case.   If mandamus did not lie in Sourdough; it does not lie here.   If there was no appeal process available in the former case; there is none here, either.

While we did not discuss the availability of a writ of review in Sourdough, neither did the City, here, ask for such a writ or in any respect comply with the provisions of Title 27, Chapter 25, MCA, in seeking that relief, if that was its intention. Aside from referring to declaratory judgement, injunction, mandamus or other appropriate writ in the title of its complaint, those forms of relief are not otherwise referred to or prayed for in the City's complaint.   Under  the  circumstances,  we are no more inclined to

7

fabricate pleadings for the parties than we are to fabricate remedies.

This Court's opinion is not to be read as rendering meaningless the statutory requirements of the Subdivision and Platting Act.  Again, as in Sourdoush, we make no comment on the county board's conduct in this case nor do we pre-judge any of the substantive issues raised by the parties in this appeal.  The discussion and resolution of those matters will simply have to await an appeal after judicial review of the approval or denial of a final subdivision plat in this or some other case and controversy directly involving those issues.

Finally, and notwithstanding the adoption of major revisions to the Subdivision and Platting Act by the 1993 Legislature, that same body has chosen not to enact an appeal process from the approval of a preliminary plat at any time since the Act was adopted.  While the wisdom of that decision may be questionable given the importance of the requirements of the Act and the potential for harm if the law is disregarded at a critical stage of the review process, it is not the prerogative of this Court to judicially remedy the situation.

Accordingly, our decision in Sourdouah is dispositive, and we are constrained to dismiss this appeal as being premature.

Furthermore, and consistent with that decision, the District Court should not have entertained the City's appeal from the County Board's decision.  Accordingly, we also remand to the District Court with instructions that it enter an order which vacates its

findings of fact, conclusions of law and judgment dated October 29, 1992 and filed November 2, 1992, and which dismisses the City's complaint without prejudice.

Appeal dismissed and case remanded.

_____
                                        Justice

We Concur:

_____
Chief Justice

_____

_____

_____

_____
          Justices

Justice Terry N. Trieweiler dissenting.

I dissent from the majority opinion.

We have repeatedly held that we will not decide cases on appeal based on issues which have never been raised in the District court. *Hanley v. Dept. of Revenue* (1983), 207 Mont. 302, 306, 673 P.2d 1257, 1259. The issue which the majority finds controlling in this case was never raised in the District Court, it was never part of the decision appealed from, and it has never been briefed nor argued as an issue on appeal. According to the rules we apply to the district courts of this state, we do not have jurisdiction to decide the issue which the majority decision finds dispositive. See *In re Marriage of Di Pasquale* (1986), 220 Mont. 497, 499, 716 P.2d 223, 225.

While the *Sourdough* decision was mentioned briefly in the intervenor's brief as it related to the issue of standing, the right of the City to appeal the decision of the County Commissioners was not an issue on appeal, and the City has had no opportunity to argue, brief, or respond to the legal issue on which the majority bases its decision to dismiss the City's appeal.

Considering our traditional notions that issues are decided most reliably after thorough argument by adversaries, how can this result be fair?

I concurred with the result of the *Sourdough* decision because the plaintiff in that case sought to appeal a county commission's conditional approval of a preliminary subdivision plat pursuant to

10

§§ 76-2-110 and 2-4-702, MCA.  After briefing the issue and hearing argument, the district court concluded, and I agreed, that the former statute pertained only to appeals from planning and zoning decisions and the latter statute was, by definition, inapplicable to the decisions of county commissioners.  That case did not address the issue of whether there is any other procedure by which county commissions can be compelled to perform their statutory obligation under the Montana Subdivision and Platting Act found at §§ 76-3-101 through -614, MCA.

In this case, the City of Xalispell did not attempt to appeal a decision of the County Commissioners based on the aforementioned statutes.  It filed a complaint for declaratory judgment and injunction and for a writ of mandamus or other appropriate writ.

The majority opinion has dismissed the City's appeal to this Court for the reason that the Subdivision and Platting Act does not provide for an appeal from a county commission's decision to conditionally approve a preliminary plat.  However, writs of mandamus are specifically intended for situations like this where there is no adequate remedy in the ordinary course of law. Section 27-26-102, MCA.  Furthermore, a writ of mandamus may be issued by the district court to a board of county commissioners to compel the performance of an act which they are obligated to perform as a duty of their office.

The City has complained that the Flathead County Commissioners have refused to perform several duties which they are required to perform under the Subdivision and Platting Act.  It is alleged that

11

the Commissioners approved the subdivision in question without making specific findings that the subdivision would be in the public interest, as required by § 76-3-102, MCA, without determining that it conforms to the local master plan, as required by § 76-3-604, MCA, and without making written findings that it considered the specific criteria set forth in § 76-3-608, MCA.

Furthermore, the City has alleged that without complying with these statutory requirements, the County Commission was without authority to approve this subdivision. This was, therefore, an appropriate situation for a writ of review, pursuant to § 27-25-102, MCA, or a writ of mandamus pursuant to § 27-26-102, MCA.

It is, perhaps, for these reasons that at no stage in the proceedings before the District Court or on appeal has either Flathead County or the intervening developer moved to dismiss the City of Kalispell's complaint, or its appeal from the judgment of the District Court, pursuant to our decision in *Sourdough.* It is simply wrong for this Court to *suasponte* decide this case on a basis that has never been suggested by the parties to the case.

The Montana Subdivision and Platting Act is extremely important to the future quality of life in Montana. Its purpose is to:

> [P]romote the public health, safety, and general welfare by regulating the subdivision of land; to prevent overcrowding of land: to lessen congestion in the streets and highways; to provide for adequate light, air, water supply, sewage disposal, parks and recreation areas, ingress and egress, and other public requirements; to require development in harmony with the natural environment . . . .

12

Section 76-3-102, MCA.

Nowhere are these considerations more relevant than Flathead County which has, in recent years, experienced the most rapid growth in Montana.

It is to accomplish these purposes that county commissioners who are asked to approve subdivisions are required to consider the master plan adopted by the county. Section 76-3-604, MCA. It is to accomplish these purposes that the county commissioners are also required to consider whether the subdivision is in the public interest and issue specific findings of fact which weigh criteria such as the need for the subdivision, effects on agriculture, effects on local services, effects on the natural environment, effects on wildlife and wildlife habitat, and effects on public health and safety. Section 76-3-608, MCA.

The majority's decision renders these essential statutory requirements meaningless because the practical effect of this decision is to preclude any form of judicial review when two out of any three county commissioners around the state simply refuse to comply with the statutes. The fact that this case was decided on this basis, without the benefit of any briefing or argument by the parties, is particularly troubling.

It is ironic that, because the Montana Legislature recognized the threat to Montana's character, beauty, and public health from uncontrolled development, it expended considerable time and effort during the past legislative session to strengthen subdivision regulations. See House Bill No. 408, 1993 Mont. Laws, ch. 272,

13

effective April 6, 1993. **Yet,** by virtue of this decision, those regulations are meaningless because they cannot be judicially enforced.

The majority concludes that the City's "appeal" is premature. However, the City's complaint to the District Court was not an **"appeal,"** and if it was, the majority should explain why it was "premature." If it is being dismissed due to the lack of a statutory appeal mechanism in the Subdivision and Platting Act, then there is no reason to distinguish between preliminary plat approval and final plat approval. There is no statutory mechanism for appealing either. If the same reasoning applies to both preliminary and final decisions, then why is this **"appeal"** simply "premature"?

In response to this dissent, the majority argues that because the intervenor made passing reference to the *Sourdough* decision while citing it for other reasons, the issue upon which this case was decided was properly raised on appeal. However, the issues, as set forth in the parties' briefs, made clear that the issue decided by the majority was not raised on appeal. The appellant presented the following issues for review:

> I. When a County takes erroneous, arbitrary, capricious action, or abuses its discretion, in a subdivision approval, does a City have standing to challenge the action when the City is a co-adopter of the Master Plan and § 76-3-601, M.C.A., authorizes review and comment by the City?

> II. Is Master Plan compliance part of the public interest criteria of the Subdivision & Platting Act, or does the County have authority to ignore the Master Plan?

14

III. Should the principles of "spot zoning" be applied
to subdivisions in unzoned areas?

The issues, as set forth by the County and the intervenor, were simply variations of the same three issues set forth above. It should be clear from the majority's own opinion that the issue it decided was not raised by the parties. The majority's opinion points out that "[W]e restate the issue on appeal as follows . . . ."

If the issue that the majority resolved was actually raised by the parties, why was it necessary to restate it?

The majority considers it significant that the City chose not to respond to the intervenor's reference to the *Sourdough* decision when the City filed its reply brief. There was no reason for the City to respond. *Sourdough* was simply not relevant to the issues raised in this appeal.

Perhaps most importantly, none of the arguments made by the majority in support of its dismissal of this appeal were made by any party in the District Court. This fact is the most logical explanation for why the complaint filed by the City was not refined to the majority's satisfaction. The City, in its complaint, sought a writ of mandamus or other appropriate writ. The purpose of requiring that objections to the inadequacy of a parties' complaint be made in the trial court is to give the party who filed the complaint an opportunity to correct any alleged deficiency. The City was not given that opportunity in this case because there was no objection to its complaint on the grounds raised by the majority

15

until the opinion was issued by this Court. It is a little late for the City to correct the majority's objections at this time.

Finally, it is appropriate to comment on the majority's statement that since the Legislature did not provide for a right of appeal from plat approval, this Court would not "fabricate" an appeal process. Such judicial restraint might be admirable if this was in fact an appeal. However, it is not. This case was commenced by the City of Kalispell when it filed a complaint for a writ of mandamus or other appropriate writ to compel the Flathead County Commissioners to perform their public duty. And, whether Commissioners can be compelled to comply with the terms of this State's Subdivision and Platting Act by mandamus or certiorari was never addressed in the *Sourdough* opinion.

Furthermore, the majority's reluctance to "fabricate" a right of appeal is selective at best. In the very same opinion, this Court goes on to advise the parties that judicial review will have to await approval of the final plat map. The majority states that:

> The discussion and resolution of those matters will simply have to await an appeal after judicial review of the approval or denial of a final subdivision plat in this or some other case and controversy directly involving those issues.

The majority must have overlooked the fact that neither did the Legislature provide an appeal process from final subdivision plat approval. Would the same Court which showed such remarkable restraint by declining to "fabricate" an appeal process from a preliminary plat approval turn around and "fabricate" an appeal process from a final plat approval? If not, then as previously

16

mentioned, the provisions of the Subdivision and Platting Act are truly meaningless.

For these reasons, I dissent from the majority opinion. I would affirm the District Court's conclusion that the City of Kalispell had standing to complain of the County Commission's approval of this subdivision. I would reverse that part of the District Court's summary judgment which dismissed the City of Kalispell's complaint, and remand this case for further hearing to determine whether there is a factual basis for the issuance of the writ of mandate or other appropriate writ sought by the City of Kalispell.

_____
J stice

Justice William E. Hunt, Sr., joins in the foregoing dissent.

_____
Justice

17